IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE HAYMAN, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 13-4108 |
| | : | |
| MIKE BATEMAN, | : | |
| COUNTY OF NORTHAMPTON, | : | |
| Defendants. | : | |
| | : | |

**Jones, II    J.**                                                        December 18, 2015

### MEMORANDUM

In his Complaint, (Dkt No. 1, Complaint [hereinafter Compl.]), Kyle Hayman ("Plaintiff") sued the County of Northampton ("the County"), Deputy Warden Bateman ("DW Bateman"), Correction Officer Miller ("CO Miller"), and various John Doe Defendants.

In his Complaint, Plaintiff alleged that (1) Defendant Officers subjected Plaintiff to excessive force and failed to provide medical care in violation of "the First, Fourth, Fifth and Fourteenth Amendments thereto, and Title 42 U.S.C. §§ 1981, 1983, 1985, and 1988, et seq., and their corollary under the Pennsylvania Constitution" (Count I, Compl. ¶¶ 28-31)[1]; and (2) the County of Northampton is liable under *Monell v. Dept. of Soc. Srvs of City of New York*, 436 U.S. 658 (1978), for failure to supervise and train (Count II, Compl. ¶¶ 32-34.). Plaintiff demands statutory, compensatory and punitive damages, attorneys' fees and costs, and "Injunctive relief including but not limited to monitoring and education." (Compl. VI.)

On March 31, 2014, upon consideration of the Plaintiff's Motion for Default Judgment as to Defendant Jason Miller, (Dkt No. 9), Default Judgment was entered against Defendant Miller on Plaintiff's Eighth and Fourteenth Amendment claims. (Dkt No. 16.)

After two requests by Plaintiff to extend the time for discovery, (Dkt Nos. 22 & 26), discovery was completed on July 1, 2015. On July 15, 2015, the County and DW Bateman, the remaining two Defendants, timely filed a Motion for Summary Judgment, (Dkt No. 30

---

[1] Presumably, Plaintiff intended to bring claims under the Fourth, Fifth, *Eighth*, and Fourteenth Amendments and in fact brings no claim under the First Amendment. Other portions of Plaintiff's Complaint support this belief and Defendants' proceed based on such an understanding. (Compl. Count I Heading; MSJ 1). Therefore, this Court will likewise consider claims under the Eighth Amendment and not the First Amendment.

1

[hereinafter MSJ]), and a Statement of Undisputed Material Facts. (Dkt No. 31 [hereinafter SOF].) This Court's Case Management Order, dated April 28, 2015, required Plaintiff to file any Response by July 29, 2015. (Dkt No. 29.) On July 31, 2015, after Plaintiff's time to file a Response had expired, Plaintiff filed a Motion for Extension of Time to File a Response to Defendant's Motion for Summary Judgment, even though Plaintiff had known about the deadline for over three months. (Dkt No. 32). This Court generously granted the extension based on Plaintiff's purported desire "to properly address Defendants' Motion for Summary Judgment in his response and brief for this Honorable Court's full and fair consideration." (Dkt No. 35). Plaintiff again failed to file a Response.  On November 9, 2015, this Court issued a Show Cause Order as to why Defendant's Statement of Facts should not be deemed admitted by November 23, 2015. (Dkt No. 36).  On November 23, 2015, Plaintiff filed a Response to Defendant's Statement of Undisputed Facts. (Dkt No. 37 [hereinafter RSOF]). With only two exceptions, (RSOF ¶¶ 4, 8), Plaintiff admitted to each fact as stated by Defendants. (Dkt No. 37).

Upon consideration of the record, the Court hereby GRANTS Defendants' Motion for Summary Judgment.

## I.      Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) (quoting *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).

## II. Factual Background

### a. The Underlying Incident

Plaintiff was incarcerated at Northampton County Jail ("NCJ") on June 10, 2011. (SOF ¶ 1; RSOF ¶ 1.) On July 14, 2011, CO Miller entered Plaintiff's cell and struck Plaintiff on the back. (SOF ¶ 2, RSOF ¶ 2; Pl. Dep. 15:6-17:12.) Plaintiff neither reported nor sought medical treatment as a result of the incident. (SOF ¶ 3, RSOF ¶ 3; Pl. Dep. 24:9-14.) Plaintiff further states that CO Miller violently abused him and three other inmates routinely. (RSOF ¶ 4; Pl. Dep. 20:21-22:5.) Plaintiff states that CO Dougherty, who is not a named defendant, knew of the abuse and did not act to stop it. (RSOF ¶ 8; Pl. Dep. 20:10-13, 21:15-18.)

Plaintiff admits that he first complained to DW Bateman on July 25, 2011. (SOF ¶ 6, RSOF ¶ 6; Pl. Dep. 32:7-11.) Once Plaintiff complained to DW Bateman about CO Miller's treatment of Plaintiff, CO Miller was moved to a different tier where the two did not interact. (SOF ¶ 7, RSOF ¶ 7; Pl. Dep. 32:12-14.) Plaintiff did not see CO Miller working on his tier again. (SOF ¶ 16, RSOF ¶ 16; Pl. Dep. 40:12-14.)  In addition, the night Plaintiff complained to DW Bateman, Plaintiff met with the on-duty lieutenant, Lt. Lambert, to discuss the incidents regarding CO Miller. (SOF ¶ 9, RSOF ¶ 9; Pl. Dep. 35:17-19.)

Lt. Lambert had not received any complaints from inmates about CO Miller prior to Plaintiff's complaint. (SOF ¶ 15, RSOF ¶ 15; Lambert Dep. 14:2-5.) Lt. Lambert asked Plaintiff questions about the incidents, took photographs of bruises on Plaintiff's body, and had Plaintiff confirm the offending officer – CO Miller. (SOF ¶¶ 10-13, RSOF ¶¶ 10-13; Pl. Dep. 35:16-39:23.) After the discussion, Lt. Lambert escorted Plaintiff to the medical department for treatment. (SOF ¶ 17, RSOF ¶ 17; Pl. Dep. 40:21-41:9.) Before July 25, 2011, Plaintiff had not requested any medical treatment and his bruises had not been visible to any officers. (SOF ¶¶ 18-19, RSOF ¶¶ 18-19; Pl. Dep. 42:9-43:15.)

On July 25, 2011, after meeting with Plaintiff, Lt. Lambert referred the matter to NCJ Internal Investigator Chris Naugle. (SOF ¶ 20, RSOF ¶ 20; Exhibit D.) Investigator Naugle

reviewed recordings of telephone calls, interviewed Plaintiff, interviewed five potential inmate witnesses, and interviewed CO Dougherty and CO Miller. (SOF ¶ 21, RSOF ¶ 21; Exhibit D.) Investigator Naugle concluded that "evidence exists that Officer Miller engaged in a pattern of behavior that served no legitimate purpose and used unwarranted force against residents as Northampton County Prison." (SOF ¶ 25, RSOF ¶ 25; Exhibit D.) As a result, CO Miller was suspended without pay effective August 10, 2011. (SOF ¶ 26, RSOF ¶ 26; Exhibit F.) After a termination hearing on August 30, 2011, CO Miller was terminated. (SOF ¶ 27, RSOF ¶ 27; Exhibit G.)

### b. The Policy

Plaintiff claims that "Defendants' developed and maintained policies, practices and customs exhibiting deliberate indifference to the Constitutional rights of persons within the geographic and jurisdictional limits of Northampton County which caused violations of Plaintiff's constitutional and other rights." (Compl. ¶ 32.) Plaintiff further claims that "[s]pecifically, Defendants' failed to adequately and properly supervise and train in various aspects of law enforcement, including, but not limited to, the laws of the United States, Commonwealth of Pennsylvania, and otherwise." (Compl. ¶ 33). Plaintiff makes no claims or factual allegations as to specific policies or customs in regards to the supervision and training of correction officers.

### III. Discussion

#### a. Defendants' Motion for Summary Judgment on all claims against the County is GRANTED.

##### i. Legal Standard

Municipal liability arises under § 1983 only when a constitutional deprivation results from an official policy or custom. *Monell*, 436 U.S. at 691-94. To prevail on a claim under § 1983, a plaintiff must establish that he was deprived of a constitutional right. *See Harvey v. Plains Twp. Police Dep't,* 635 F.3d 606, 609 (3d Cir. 2011). Under *Monell*, a plaintiff can show that a policy existed "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

Beyond proving that an unlawful policy existed, a plaintiff must also demonstrate that "such a policy or custom was the proximate cause of the injuries suffered." *Patterson v. City of Phila.*, 2009 WL 1259968, at *10 (E.D. Pa. 2009) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "'A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom.'" *Bielevicz*, 915 F.2d at 851 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

Furthermore, the Third Circuit has held that "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone,* 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3d Cir. 1997)). In order for a municipality's failure to train to be actionable under section 1983, however, it must amount to "deliberate indifference" to the rights of the persons with whom police officers come into contact, and it must be shown to be a part of city policy. *City of Canton v. Harris*, 489 U.S. 378, 389-390 (1989). To establish the requisite "deliberate indifference," there must be proof of "a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead,* 381 F.3d 235, 244 (3d Cir. 2004). The plaintiffs "must also show that a reasonable municipal policymaker had knowledge of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question." *Lazarde v. City of Reading*, 2012 WL 4473246, at *4 (E.D. PA. 2012) (internal citation omitted).

### ii. Analysis

Plaintiff's claims under *Monell* are based on allegations that Defendants failed to adequately and properly supervise and train in various aspects of law enforcement and that such acts or omissions by Defendants demonstrated a deliberate indifference that caused the violation of Plaintiff's rights. (Compl. ¶¶ 33-34). Plaintiff has failed to point to any facts in the record to sustain this claim. There is no evidence in the record to show a policy or custom of the County or its policymakers. Furthermore, there is no evidence of a pattern or practice that would put the County or its policymakers on notice. In fact, the record shows that there were no prior

complaints of excessive force against CO Miller, (SOF ¶ 15, RSOF ¶ 15; Lambert Dep. 14:2-5), and that, once Plaintiff made such a complaint, CO Miller was suspended pending an investigation and ultimately terminated. (SOF ¶ 26-27, RSOF ¶ 26-27; Exhibit F; Exhibit G.) As a result, there is no evidence in the record to show a causal connection between any such policy or custom and Defendants' behavior. All claims against the County are DISMISSED.

### b. Defendants' Motion for Summary Judgment on all claims against (retired) Deputy Warden Bateman in his official capacity is GRANTED.

#### i. Count I

In Count I, Plaintiff claims "Defendants caused plaintiff [sic] to suffer excessive force by their wrongful conduct and in failing to provide medical attention." To the extent that Plaintiff may have intended Count I to include claims against DW Bateman, such claims are dismissed.

#### 1. Legal Standard

In general, officers should take reasonable steps to protect a victim from another officer's excessive force. *Adams v. Officer Eric Selhorst*, 449 F. App'x 198 (3d Cir. 2011) (non-precedential). The Third Circuit has held that an officer can be held liable "if the [officer] had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The "officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651; *see also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). Moreover, neither rank nor supervisory status is a factor in assessing whether [the officer] had "a realistic opportunity to intervene." *Id.* at 652 (citing *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)).

Deliberate indifference inheres in an official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Smith v. Hayman*, 489 F. App'x 544, 546-47 (3d Cir. 2012) (non-precedential) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)). Therefore, to succeed on a claim of deliberate indifference to a serious medical need, Plaintiff must show that the official did more than unknowingly or inadvertently fail to provide medical care. *Estelle*, 429 U.S. at 105-06. ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"). Unless the officer knew of the serious medical need of the plaintiff and nevertheless was deliberately indifferent to such a need by delaying or denying treatment, then the officer cannot be liable for failure to provide

medical care. *Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013) (non-precedential) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

### 2. Analysis

There is no dispute that DW Bateman was not present at the time of the abuse and had no awareness of the abuse until Plaintiff came forward on July 25, 2011. (SOF ¶ 6-9, RSOF ¶ 6-9; Pl. Dep. 32:7-11 - 35:17-19.) DW Bateman did not have a realistic and reasonable opportunity to intervene until he became aware of the abuse. Once DW Bateman became aware of the abuse, he immediately intervened by moving the offending officer to a different tier and having an investigation opened. (SOF ¶ 6-9, 20; RSOF ¶ 6-9, 20; Pl. Dep. 32:7-11 - 35:17-19; Exhibit D.) As a result of the investigation, CO Miller was suspended and ultimately terminated. (SOF ¶ 26-27, RSOF ¶ 26-27; Exhibit F; Exhibit G.) Therefore, DW Bateman intervened effectively upon becoming aware of the abuse and having a reasonable opportunity to intervene.

There is also no dispute that Plaintiff first implicitly sought treatment from DW Bateman for his injuries on July 25, 2011, when he came forward about the abuse and was treated that same day. (SOF ¶ 17, RSOF ¶ 17; Pl. Dep. 40:21-41:9.) Before July 25, 2011, there could be no intentional denial of medical treatment because there was no knowledge of any need for medical treatment – Plaintiff never implicitly or explicitly sought medical treatment from DW Bateman. (SOF ¶¶ 18-19, RSOF ¶¶ 18-19; Pl. Dep. 42:9-43:15.) Since Plaintiff was treated the same night DW Bateman became aware of Plaintiff's injuries, DW Bateman could not have intentionally denied or delayed medical treatment. (SOF ¶ 17, RSOF ¶ 17; Pl. Dep. 40:21-41:9.)

Therefore, even if Plaintiff did intend to assert his claims in Count I against DW Bateman, such claims must be dismissed.

### ii. Count II

In Count II, Plaintiff brings *Monell* claims against DW Bateman in his official capacity. However, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (citing *Monell v. Dept. of Soc. Srvs of City of New York*, 436 U.S. 658, 690 n. 55 (1978)). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165-66 (quoting *Monell*, 436 U.S. at 690, n. 55); *see also Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 130 (3d Cir. 1985).

Thus, claims against DW Bateman in his official capacity fail as a matter of law. *Accord Munson v. City of Phila.*, 2009 WL 2152280, at *4 (E.D. Pa. 2009).

### IV.     Conclusion

The Court GRANTS Defendants' Motion as to all claims against both remaining Defendants; the case is DISMISSED.

BY THE COURT:

/s/ C. Darnell Jones, II
_____

**C. Darnell Jones, II          J.**